COLLEEN C. MURAOKA, Plaintiff-Appellant, *v.* CHESTER K. MURAOKA, Defendant-Appellee

NO. 13371

(FC-DIVORCE NO. 87-0513)

JUNE 13, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Colleen C. Muraoka (Colleen) appeals the family court's September 6, 1988 Divorce Decree and the February 1, 1989 Order Denying Motion for Attorney's Fees and Costs on Appeal. With respect to the September 6, 1988 Divorce Decree, we affirm the denial of periodic alimony and attorney fees, costs, and expenses; affirm the award of $10,000 alimony in gross to Colleen; and vacate and remand for reconsideration the division and distribution of property. We affirm the February 1, 1989 Order Denying Motion for Attorney's Fees and Costs on Appeal.

On September 2, 1967 Colleen, born on July 1, 1948, and defendant Chester K. Muraoka (Chester), born on July 1, 1934, were married. Their daughter, Beth, was born on February 12, 1968.

At the time of their marriage, Colleen was a 19-year-old high school graduate. Chester was a 33-year-old University of Hawaii graduate and an electrical engineer employed by the United States Navy. Neither furthered his or her formal education during the marriage.

At the time of divorce, Chester continued to be an electrical engineer employed by the Navy ($4,678.26 per month) and Colleen was a part-time hourly wage employee for both the Schofield Post Exchange ($5.05 per hour for 20 to 24 hours per week) and United Air Lines ($6.03 per hour for 20 hours per week).

Beth has been a full-time student at the University of Hawaii since September 1986. The family court ordered Chester to pay "all of those funds which will reasonably be required for the support, maintenance and education of [Beth] up to the date on which she obtains her Bachelor of Arts degree in May 1990."

Chester may, but is not required to, retire in 1992 after 30 years of continuous service. The family court awarded Colleen one-half of a fraction of Chester's retirement benefits if, as and when received by him. The numerator of the fraction is the time between September 2, 1967 and June 22, 1986. The denominator is the total time of Chester's civil service employment.

## I.

The family court denied Colleen's request for periodic alimony but awarded her $10,000 alimony in gross. It also denied Colleen's requests for orders requiring Chester to pay the attorney fees Colleen incurred in the family court and in this appeal. Upon a review of the record we conclude that in these respects the family court did not abuse its discretion.

## II.

Excluding the unappraised items of personal property that the family court awarded to the possessor thereof and the two six-urn Valley of the Temple cemetery niches (estimated value $8,428) that the family court ordered sold and the proceeds divided equally, the uniform starting point (USP), *see Malek v. Malek,* 7 Haw. App. _____,

768 P.2d 243 (1989), for the distribution of the net market values in this case is as follows:

DISTRIBUTION UNDER THE UNIFORM STARTING POINT

| Item | Category | Colleen | Chester |
|---|---|---|---|
| Mililani (Puanani) Residence[1] | 5 | 57,071.50 | 57,071.50 |
| Wahiawa (Karsten) Residence | 2 | 33,820.75 | 101,462.25 |
| Autos | 5 | 2,600.00 | 2,600.00 |
| Cash | 3 | | 8,000.00 |
| Cash | 5 | 2,000.00 | 2,000.00 |
| Chester's Life Insurance | 5 | 5,606.00 | 5,606.00 |
| Colleen's IRA | 5 | 1,076.00 | 1,076.00 |
| Chester's IRA | 5 | 4,014.50 | 4,014.50 |
| TOTAL | | 106,188.75 | 181,830.25 |

Colleen's November 13, 1987 position statement generally asked the family court to order the following distribution:

DISTRIBUTION UNDER COLLEEN'S
APRIL 1988 POSITION STATEMENT

| Item | Colleen | Chester |
|---|---|---|
| Mililani Residence | 114,143.00 | |
| Wahiawa Residence | | 135,283.00 |
| Autos | | 5,200.00 |
| Cash | 12,000.00 | |
| Chester's Life Insurance | | 11,212.00 |
| Colleen's IRA | 2,152.00 | |
| Chester's IRA | | 8,029.00 |
| Equalization Payment | 15,714.50 | (15,714.50) |
| TOTAL | 144,009.50 | 144,009.50 |

---

[1] The Mililani residence is a two-story residence: The first floor has a bathroom, a family room, and a bedroom. The second floor has three bedrooms, a bathroom, a kitchen, a dining room, and a living room. The record reflects that the owner may live on the first floor and rent the second floor.

The family court's actual distribution of the net market values in this case is as follows:

DISTRIBUTION UNDER THE DIVORCE DECREE

| Item | Colleen | Chester |
|---|---|---|
| Mililani Residence | 114,143.00 | |
| Wahiawa Residence | | 135,283.00 |
| Autos | | 5,200.00 |
| Cash | | 12,000.00 |
| Chester's Life Insurance | | 11,212.00 |
| Adjustment | (1,865.00) | 1,865.00 |
| IRA | 2,152.00 | 8,029.00 |
| TOTAL | 114,430.00 | 173,589.00 |

RECAPITULATION

| Item | Colleen | Chester |
|---|---|---|
| Uniform Starting Point | 106,188.75 | 181,830.25 |
| Colleen's Position | 144,009.50 | 144,009.50 |
| Decree | 114,430.00 | 173,589.00 |

In his May 26, 1988 oral decision, the family court judge decided that the value of the Wahiawa residence was $22,000.00 at the date of marriage and $144,000.00 at the time of divorce. Deducting the $6,717.00 mortgage indebtedness at the time of divorce the family court judge decided that the category 5 value of the Wahiawa residence was $115,283.00, of which 25 percent is $28,820.75. Then the family court judge stated:

The Court, using the starting point on the Karsten property, Wahiawa property, total one fou[r]th of the value previously recited was twenty-eight thousand eight hundred and twenty dollars.

And the Court rounded it off to thirty thousand dollars in view of the fact that there was some contribution by the wife because of living there for two years and she made some assistance so the Court increased it up to thirty thousand dollars.

Subsequently, Colleen's share was changed. Item 6(b) of the September 6, 1988 Divorce Decree states in part:

All of the interest of the parties in and to the improved parcel of real property located at 328-B Karsten Drive, Wahiawa, Oahu, Hawaii (Oahu Tax Map Key No. 7-5-16-11), having a net value of $135,283.00, which sum includes therein the Court's determined interest of Plaintiff therein ($20,000.00), is awarded to Defendant, subject, however, to the obligation of Defendant to pay the balance due on the note secured by the first mortgage thereon in accordance with the terms thereof.

Thereafter, Colleen's share was changed again. Item 7.B. of the February 1, 1989 Findings of Fact states in part:

> The Court finds that the Karsten property, as of the date of the trial, had a value of $144,000.00 with a mortgage balance of $6,717.00, leaving a net value as of the date of trial at $135,283.00.[2] The Court finds that Plaintiff's interest in said property is the sum of $35,000.00.

(Footnote added.)

In fact, $22,000.00 was the gross market value of the Wahiawa residence as of the date of marriage. The net market value at that time was no more than $2,000.00. Thus, the family court's decision was made when it thought it was dealing with a category 2 value of $115,283.00 and Colleen's 25 percent USP share thereof of $28,820.00. Later, in the September 6, 1988 Divorce Decree, the family court recognized that it was dealing with a $135,283.00 category 2 value. Later, in the February 1, 1989 Findings of Fact, the family court recognized that it was dealing with Colleen's 25 percent USP share of $33,820.75, which it rounded off to $35,000.00, presumably for the same reasons that it had previously rounded off her $28,820.00 share to $30,000.00.

In its May 26, 1988 oral decision the family court decided that it had awarded Colleen $6,865.00 more than her "marital estate" and ordered Colleen to pay that amount to Husband. Subsequently, that amount was reduced by $5,000.00. Item 12 of the September 6, 1988 Divorce Decree states in part:

> *DISPARATE SITUATION:* The Court, has determined that after crediting to Defendant all of Plaintiff's court-awarded

---

[2] The $2,000.00 net value at the time of marriage must also be deducted to arrive at a date of trial net value of $135,283.00.

interests in and to: (a) the net cash surrender value of Defendant's life insurance policies, i.e., $5,606.00 (1/2 of $11,212.00), (b) the Plaintiff's total awarded interest in the marital part of the funds ($2,000.00) which are on deposit in Defendant's Bank of Hawaii savings account, i.e., $1,000.00, (c) the 1/2 interest awarded to Plaintiff in and to the net value of the three (3) automobiles to which reference is made in this Decree, i.e., the sum of $2,600.00 (1/2 of the total value of $5,200.00) and (4) the $20,000.00 court-determined interest of Plaintiff in the Karsten property, there will remain a disparity in the allocation of property in the sum of $1,865.00 favorable to Plaintiff. Upon the sale of the cemetery niches, to which reference is made in this Decree, there shall be withheld from Plaintiff's one-half share of the net proceeds of such sale (or sales) the sum of $1,865.00 which amount shall be paid to Defendant in full discharge of said disparate amount. Upon presentment, Plaintiff shall execute and deliver to Defendant a promissory note the face amount of which shall be equal to the dollar amount of the above-stated disparate amount ($1,865.00), less however the amount which shall arise from the sale of the cemetery niches which amount, up to $1,865.00 shall be applied to the elimination of said disparate amount.

Item I of the February 1, 1989 Conclusions of Law states:

*Property Equalization.* The Court has determined that the interest of Plaintiff in and to the Karsten Drive property is the sum of $35,000.00. The Court has also determined that Defendant's interest in the Puanani Place property is the sum of $57,071.00. The difference of $22,071.00 shall be paid to Defendant by Plaintiff by the following credits and promissory note:

(1) $5,606.00 (1/2 of net cash surrender value in Defendant's life insurance policies);

(2) $2,600.00 (1/2 of the automobile values of $5,200.00);

(3) $2,000.00 (1/2 of the total $4,000.00 in the two bank accounts); and

(4) $10,000 (alimony in gross from Defendant to Plaintiff), totalling $20,206.00 for which sum Plaintiff shall exe-

cute and deliver to Defendant a promissory note in the face amount of $1,865.00 which amount will be adjusted by the amount paid to Defendant for Plaintiff's share from the sale of the cemetery niches. Said note shall be non-interest bearing for and during the first six months from the entry of the Divorce Decree. If any part of same remains unpaid, simple interest will accrue on the then remaining principal balance at the then statutory interest rate beginning with the first day following the expiration of said six months.

After reasonably deciding to award to Colleen the Mililani residence and her IRA, the family court decided that it had awarded Colleen more than her "marital estate" and ordered her to pay Chester the excess. We are no less than puzzled by the family court's "marital estate" theory of property division and distribution. The logical implications of that theory in the context of this case cause us to conclude that the family court's decisional process may have been flawed. We do not decide whether the family court's division and distribution of the plus and minus values in this case was within its allowed discretion.

In contested divorce cases where the family court is dividing and distributing the assets and debts of the parties, the authorized decisional process is a three-step process as follows: First, based on the stipulations of the parties and the findings of fact, the family court should prepare a USP list of (a) the various items of plus and minus value being divided and distributed (b) showing their respective USP categorizations and (c) how they would be divided and distributed to the parties under the applicable USPs.

Second, the family court should prepare two lists in the same form as step one's USP list showing the position of each of the parties with respect to the division and distribution of each of the various items of plus and minus value.

Third, as stated by this court in *Woodworth v. Woodworth*, 7 Haw. App. ____, 740 P.2d 36 (1987), the family court "then ... must exercise its equitable discretion under applicable case law and Hawaii Revised Statutes § 580-47(a) (1985)." 7 Haw. App. at ____, 740 P.2d at 42.

In *Woodworth* we stated as follows: "If the family court's award materially differs from the USP award, and the family court's award is appealed, the family court must express its reason(s) for

the difference(s)." 7 Haw. App. at ____, 740 P.2d at 42. We now amend that requirement. If the family court's division and distribution of the assets and debts of the parties is appealed and the appellant is dissatisfied because the family court's division and distribution materially differs from the USP, then the family court must specify the factual considerations upon which the difference is based. If the appellant is dissatisfied because the family court's division and distribution does not materially differ from the USP in the manner requested at the trial by the appellant, then the family court must specify the factual considerations upon which the denial of the requested difference is based.

When it exercises its equitable discretion during step three, the family court is required to comply with applicable case law and Hawaii Revised Statutes § 580-47(a) (Supp. 1988). The latter states in relevant part as follows:

> In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

In its February 1, 1989 Finding of Fact 6 the family court recites that it "examined all of the case in accordance with Section 580-47, H.R.S. [and] all applicable caselaw." However, the family court's oral decision, divorce decree, and other findings of fact and conclusions of law cast serious doubt upon the accuracy of that statement. Based on the record we are unable to conclude that the family court actually went through step three. Consequently, we vacate the family court's division and distribution of the assets and debts of the parties and remand for further proceedings consistent with this opinion.

## CONCLUSION

We vacate all those portions of the September 6, 1988 Divorce Decree involving the distribution of the assets and debts of the parties and remand for reconsideration in accordance with this

opinion. In all other respects we affirm the September 6, 1988 Divorce Decree.

We affirm the February 1, 1989 Order Denying Motion for Attorney's Fees and Costs on Appeal.

*Robert G. Hogan* and *A. Debbie Jew (Oliver, Lee, Lawhn, Ogawa & Lau* of counsel) on the briefs for plaintiff-appellant.

*Daniel S. Ukishima* on the brief for defendant-appellee.