**ROBBIN H. HATAYAMA**, Plaintiff–Appellant, v. **KENNETH M. HATAYAMA**, Defendant/Third–Party Plaintiff–Appellee, v. **FLORENCE EUGENIA SEE**, Third–Party Defendant

NO. 15057

(FC–D NO. 90–1348)

OCTOBER 15, 1991

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE YIM ASSIGNED BY REASON OF VACANCY

2

OPINION OF THE COURT BY BURNS, C.J.

In this divorce case commenced by plaintiff Robbin H. Hatayama (Wife) against Kenneth M. Hatayama (Husband), the primary issue was the division and distribution of the net market value (NMV) of 47–006 Okana Place, Kahaluu, Hawaiʻi (Okana Place). Because the record title to Okana Place was in the name of Husband, Wife, and Wife's mother, Florence Eugenia

See (Florence), as joint tenants with full rights of survivorship, Husband was permitted to file a third–party complaint against Florence.

Wife appeals the December 24, 1990 Divorce Decree (Divorce Decree), contending that the family court abused its discretion when it awarded her only 30% of 99% minus $50,000 of the net sales proceeds from the sale of Okana Place. We conclude that the family court's deviation from the Uniform Starting Point (USP) was partially based on invalid reasons. Therefore, we vacate sections (7), (8), (10)(B), (10)(C), (10)(D), and (11) of the Divorce Decree and paragraphs 7, 8(a), 8(b), 8(c), 8(d), 8(f), 9, 10, 11, and 12 of the March 5, 1991 Conclusions of Law and remand the issues decided therein for reconsideration in the light of this opinion.

## FACTS

Husband, his brother, and his two sisters inherited a residence from their parents. They sold it and, in 1979, used the proceeds to purchase Okana Place. They moved in and began making improvements. They completed most of the improvements prior to the marriage of Husband and Wife.

Husband and Wife were married on May 8, 1982. Wife's two daughters from a previous relationship, born on February 10, 1973 and November 29, 1976, respectively, lived with them. Initially, Husband and Wife and Wife's two daughters lived in a rented house in Kahaluu. In approximately December of 1982, they moved into Okana Place. Before Husband and Wife moved in, they worked for several weeks to complete the improvements which had been started by Husband and his brother and sisters. Husband's brother subsequently died. Apparently the brother's share passed equally to the surviving siblings.

Okana Place had a downstairs rental unit. In October of 1990 the rent was $575 per month.

An appraisal determined that the market value of Okana Place was $187,000 on May 8, 1982. In 1987 Husband's sisters filed a partition action against him. Thereafter, Okana Place was marketed but did not sell. In August of 1987 Husband purchased his sisters' shares for $105,000, of which $5,000 was applied to the closing costs. Because Husband could not qualify for a mortgage, Wife and Florence agreed to co–sign the mortgage note. Since the lender required all three borrowers to be record owners, title was placed in the names of Husband, Wife, and Florence. Because the closing costs exceeded $5,000, Florence contributed $500 cash toward the purchase. Florence considered Okana Place to be Husband's and Wife's.

Husband's understanding was that Wife would collect the rental payments and pay the mortgage from the rental payments, her earnings, and Husband's earnings which he turned over to her. In early 1988 Wife failed to pay the mortgage for several months. Husband did not learn of this delinquency until he received a foreclosure notice. Thereafter, Husband began collecting the rental payments and paying the mortgage. He also satisfied the delinquency.

The date of final separation in contemplation of divorce (DOFSICOD) occurred in February 1990 when Husband moved out. Wife and her children remained at Okana Place, rent–free.

The case was tried on October 12, 1990. The family court announced its oral decision on October 18, 1990. The family court's March 5, 1991 Findings of Fact state in relevant part as follows:

> 25. At the time of the buy out [Husband] never promised or indicated to [Wife] or [Florence] that he wanted or intended them to have an ownership interest in [Okana Place].

* * *

27.   [Husband] did not intend to give either [Wife] or [Florence] an ownership interest in [Okana Place]. His understanding was that they co–signed the mortgage as an accommodation to allow him to buy out his sisters' interest in [Okana Place].

In consideration of her involvement, the Divorce Decree awarded one percent of the Okana Place net sales proceeds to Florence.

In consideration of the fact that Husband's sisters each received $50,000 for their share of Okana Place, the parties agreed that $50,000 of the Okana Place net sales proceeds should be awarded to Husband and the Divorce Decree so ordered.

The Divorce Decree awarded 30% of the remaining Okana Place net sales proceeds to Wife and the balance to Husband.[1] It ordered Wife to reimburse Husband from her 30% share 30% of the excess of Husband's mortgage, property tax, and insurance payments in excess of the rental received during the period from February 1990, the beginning of the month of the separation, to October 31, 1990, the end of the month of the trial. Commencing

---

[1] The Divorce Decree orders the following division:
1.   1% of the net sales proceeds to Florence
2.   $50,000 to Husband
3.   30% of the remainder to Wife
4.   balance to Husband

The division specified by paragraphs 5, 6, and 9 of the Conclusions of Law is as follows:
1.   1% of the net sales proceeds to Florence
2.   $50,000 to Husband
3.   30% of the net sales proceeds to Wife
4.   69% of the net sales proceeds to Husband

The Conclusions of Law award 100% plus $50,000. Fortunately, the Divorce Decree is the operative document.

November 1, 1990 and until the sale, it authorized Husband to collect the rent; ordered him to pay the mortgage, property tax, and insurance payments; and ordered Wife to reimburse him 30% of his resulting deficiency.

In its March 5, 1991 Conclusions of Law, the family court expressed its reasons for the deviation from the USP as follows:

8. The Court concludes, however, that it is fair and equitable to deviate from a 50–50 USP division of [Okana Place] for the following reasons:

(a) [Okana Place] was initially purchased by [Husband] and his sisters using their inheritance prior to the parties' marriage;

(b) [Wife's] name was not on title until more than five (5) years after the parties['] marriage and had been on title for about eighteen (18) months when they separated;

(c) [Husband's] earnings were used during most of the marriage to pay the mortgage and [Wife's] earnings were not;

(d) During the brief period immediately after the buy out when [Wife] was supposedly contributing some of her earnings to the mortgage payments — which was also the period when [Wife] was supposed to make the mortgage payments from the parties' combined earnings which were deposited into her checking account — she allowed the mortgage to go into default;

(e) After receiving notice of the default [Husband] undertook to bring the mortgage current, again using his earnings without any contribution from [Wife] out of her earnings; and

(f)    [Wife] and her children from a previ-
ous relationship have lived in [Okana Place]
rent–free, including their use of [Okana Place]
after the parties' separation in February of 1990.

## DISCUSSION

At the date of the conclusion of the evidentiary part of the trial
(DOCOEPOT), the NMV of the one–fourth of the residence that
Husband owned on the date of marriage was Husband's Categories
1 and 2 NMV.  The DOCOEPOT NMV of the one–twelfth that
Husband inherited from his brother was Husband's Categories 3
and 4 NMV.  Although its actual NMV was probably higher, the
parties agreed that the NMV of this one–third (one–fourth plus
one–twelfth) was $50,000.  The family court awarded this $50,000
to Husband.  The family court also awarded one percent of the net
sales proceeds to Florence.  The one percent awarded to Florence
and the $50,000 awarded to Husband for his Categories 1, 2, 3, and
4 NMV are not in dispute.

According to the record title, Florence and Wife each owned
one–third of the remainder.  Based on the evidence, however, the
family court decided that both were merely accommodation par-
ties.  Therefore, the NMV of the remainder was Husband's Cate-
gory 5 NMV.  We cannot tell from the record how much this was in
actual dollars.  The applicable USP was 50% to Husband and 50%
to Wife.  The family court awarded this Category 5 NMV 70% to
Husband and 30% to Wife.

The general question on appeal is whether the family court
abused its discretion.  The required utilization of Categories of
NMVs and USPs for the award of the Categories of NMVs, *see*
***Gardner v. Gardner***, 8 Haw. App. 461, 810 P.2d 239 (1991); ***Ben-
nett v. Bennett***, 8 Haw. App. 415, 807 P.2d 597 (1991); ***Malek v.
Malek***, 7 Haw. App. 377, 768 P.2d 243 (1989); ***Woodworth v.***

*Woodworth*, 7 Haw. App. 11, 740 P.2d 36 (1987), *overruled in part*, *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988), and when the case is appealed, the required specification by the family court of the factual considerations upon which the deviation or the refusal to deviate from the USP is based, *see Muraoka v. Muraoka*, 7 Haw. App. 432, 776 P.2d 418 (1989), make the question much more specific.

The USPs specify how the Categories of NMVs to be divided and distributed in a divorce case shall be divided and distributed if the evidence in the record establishes only the date of the marriage, the entitlement to a divorce, and the ownership of Categories of NMVs and if there is no evidence relevant to

> the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

Hawai'i Revised Statutes § 580–47(a) (Supp. 1990). The party who wants the family court to deviate from the USPs has the burden of proof.[2] When the appeal challenges a deviation from the

---

[2] In *Gardner v. Gardner*, 8 Haw. App. 461, 471, 810 P.2d 239, 244 (1991), we stated that
> [i]f there can be no uniform starting points, then categorization and the uniform decisional process are exercises without any useful or meaningful purpose.

The above statement in *Gardner* was an overstatement. Every judge dividing and distributing property in a divorce case has a starting point. The judge's starting point is how the judge will divide and distribute the Category or Categories of NMVs to be divided and distributed in the divorce case if the evidence in the record establishes only the date of the marriage, the entitlement to a divorce, and the ownership of one or more Categories of NMVs. The party who desires an ending point different than the family court judge's starting point has the burden of proof. Procedurally, there are four possibilities: (A) in each divorce case, the family court judge does not announce his or her starting point or reasons for devi-

USP, the appellate court determines (1) whether, as a matter of law, the factual considerations specified by the family court and the appellant authorized any deviation from the USP; and (2) if the answer is yes, whether the extent of the deviation was an abuse of the family court's discretion. When the appeal challenges a refusal to deviate from the USP, the appellate court determines (1) whether, as a matter of law, the factual considerations specified by the family court and the appellant authorized any deviation from the USP; and (2) if the answer is yes, whether the refusal to deviate from the USP was an abuse of the family court's discretion. The reviewing court thereby develops the uniformly applicable principles, policies, and rules of equitable distribution, and range of choice, and exposes, rejects, and discards the invalid reasons for

---

ating or not deviating from that starting point; (B) in each divorce case, the family court judge announces his or her starting point, but does not announce his or her reasons for deviating or not deviating from that starting point; (C) in each divorce case, the family court judge announces his or her starting point and reasons for deviating or for not deviating from that starting point; (D) in each divorce case, the family court judge starts at the Uniform Starting Point (USP) and announces his or her reasons for deviating or not deviating from the USP. In *Bennett v. Bennett*, 8 Haw. App. 415, 807 P.2d 597 (1991), two judges of this court concluded that a statewide USP was a priority goal and opted to mandate (D). The third judge concluded that the Hawai'i appellate courts are powerless to mandate (D).

There are five Categories of NMVs. *Woodworth v. Woodworth*, 7 Haw. App. 11, 740 P.2d 36 (1987), *overruled in part, Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988). Each has a USP. *Id.* The Category 5 NMV is the difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the date of the conclusion of the evidentiary part of the trial minus the NMVs, plus or minus, includable in Categories 1, 2, 3, and 4. The USP applicable to the Category 5 NMV is 50% to each spouse. In the absence of a USP, each family court judge will have the discretion to start at a different Category 5 starting point in each divorce case. The family court judge will have the discretion to apply a Category 5 starting point of 100% to the husband and 0% to the wife in one case and a Category 5 starting point of 100% to the wife and 0% to the husband in another case. On appeal, only the family court judge's ending point will be reviewed and it will be reviewed only under the abuse of discretion standard of review.

deviation or for refusing to deviate from the USP that some of the many family court judges are using.

In this case, the family court appears to have overemphasized the past (during the marriage) and underemphasized the present (at the time of the divorce) and future (after the divorce). It appears to have underemphasized the relative abilities of the parties and the condition in which each party will be left by the divorce.

Reason 8(a) is accommodated by the USPs applicable to the Category 1 and 2 parts of the NMV of Okana Place. In the absence of extraordinary circumstances, reason 8(a) does not authorize a deviation from the USP.

Reason 8(b) applies only to the Category 5 part of the NMV of Okana Place. The Category 5 part of the NMV of Okana Place would be a Category 5 NMV even if Wife's name had not been placed on the title. Therefore, reason 8(b) does not authorize a deviation from the USP.

Reasons 8(c) and 8(e) do not authorize a deviation from the applicable USP. They also evidence a fundamental misunderstanding of the economic consequences of being married. Divorce is not a vehicle by which one spouse is compensated for having given more than he or she received during the marriage or for having had to suffer during the marriage from the other spouse's inadvertent, negligent, or intentional inadequacies, failures, or wrongdoings, financial or otherwise. In other words, evidence that the husband or the wife was a bad mate, spouse, lover, sex partner, conversationalist, protector, cook, housekeeper, washer, ironer, gardener, host, social or traveling companion, provider, income producer, investor, manager of money, handyperson, parent, in–law, or the like, is not relevant to the issue of the division and distribution of property. If such evidence were relevant, each spouse would be well–advised to prepare from the date of the marriage for the possibility of a divorce by meticulously keeping score in a daily diary. The trial would be a contest of diaries and experts.

Allowing it to be such a vehicle would be contrary to the public policy in favor of loving, trusting, harmonious marriages and no–fault divorces.

During a marriage, in the absence of a legally permissible and binding agreement otherwise, *see* HRS Chapter 572D (Supp. 1990), the husband's and the wife's earnings are marital partnership earnings, *Gardner v. Gardner*, 8 Haw. App. at 464, 810 P.2d at 242 (1991); a NMV acquired with marital partnership earnings is marital partnership property; and marital partnerships are equal partnerships. During a marriage, both partners enjoy the consequences of one partner's successes and both partners suffer the consequences of one partner's failures. The facts that one of the marital partners did all the work and generated all the money while the other did other things, nothing, or spent the money; that one of the marital partner's earnings during the marriage and not the other's were used during most of the marriage to pay the residential mortgage; that title of the residence was taken in one of the marital partner's names; and that, after he received notice of the other party's default, the husband undertook to bring the residential mortgage current, using the money he earned for the marital partnership without any contribution from the money wife earned for the marital partnership, do not, in the absence of extraordinary circumstances, authorize a deviation from the USP.

Reason 8(d) probably does not authorize any deviation from the USP. In the absence of extraordinary circumstances, a spouse's financial errors two years prior to the DOFSICOD do not authorize a deviation.

Reason 8(f) possibly authorizes two specific deviations from the USP as follows: It may authorize an order requiring Wife to pay her fair share of the net expenses of Okana Place post–DOFSICOD. Depending on the answers to relevant questions, it may authorize an order requiring Wife to pay Husband his fair

share of the rental value of Okana Place post–DOFSICOD. Some of the relevant questions are: Why did Wife remain? What did Wife know or should she have known about the consequences of her continued occupancy? Did Husband ask Wife to vacate? What would have been done with Okana Place had Wife vacated it? If Wife had vacated the residence, would she have been eligible for temporary alimony? Why did Husband not seek a court order evicting Wife or charging her rent payable to the marital estate?

## CONCLUSION

Accordingly, we vacate sections (7), (8), (10)(B), (10)(C), (10)(D), and (11) of the December 24, 1990 Divorce Decree and paragraphs 7, 8(a), 8(b), 8(c), 8(d), 8(f), 9, 10, 11, and 12 of the March 5, 1991 Conclusions of Law and remand the issues decided therein for reconsideration in the light of this opinion.

*Charles R. Kozak* on the brief for plaintiff–appellant.
*Robert M. Harris* and *David Brustein* on the brief for defendant/third–party plaintiff–appellee.

## CONCURRING OPINION BY HEEN, J.

I concur in the result only of this opinion, for the reasons stated in my concurrence in *Bennett v. Bennett*, 8 Haw. App. 415, 807 P.2d 597 (1991).

Additionally, I am compelled to comment further on the majority opinion in this case. In this case, the majority has attempted to establish a further foundation for the Uniform Starting Points (USP) established by prior opinions. In doing so, they have only served to emphasize what I consider an invalid deviation

from Hawai'i Revised Statutes (HRS) § 580–47(a) (Supp. 1990). I suggest we revisit the statute.

HRS § 580–47(a) provides in pertinent part that

[i]n making such further orders [regarding, *inter alia*, division and distribution of the marital property], the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

Our appellate courts have consistently construed HRS § 580–47 to confer wide discretion on the trial courts and have held that each case must be decided upon its own facts and circumstances. *See, e.g.*, **Carson v. Carson**, 50 Haw. 182, 436 P.2d 7 (1967).

In footnote 2 of the majority opinion here, the majority states:

In the absence of a USP, each family court judge will have the discretion to start at a different Category 5 starting point in each divorce case. The family court judge will have the discretion to apply a Category 5 starting point of 100% to the husband and 0% to the wife in one case and a Category 5 starting point of 100% to the wife and 0% to the husband in another case. On appeal, only the family court judge's ending point will be reviewed and it will be reviewed only under the abuse of discretion standard of review.

The statement is entirely correct and is in complete consonance with the statute. It is our function to review the trial court's decision to determine whether it leaves the parties in a position that satisfies the factors outlined in the statute. It is not our function to determine if the court started from a point which is not mandated by the statute.

I note that in order to provide some uniformity in the award of child support, the legislature has adopted uniform guidelines for the courts' assistance. *See* HRS Chapter 576(D) (Supp. 1990). If uniform starting points are as important as the majority considers them to be, the issue should be presented to the legislature for its consideration.