JASON TAMASESE WOODWORTH, Plaintiff-Appellant, v. MICHIKO WOODWORTH, Defendant-Appellee

NO. 11436

(FC-D 85-460)

JUNE 22, 1987

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

This is an appeal by plaintiff Jason Tamasese Woodworth (Husband) of the division and distribution of property. We vacate and remand for a new trial that portion of the May 6, 1986 divorce decree pertaining to the division and distribution of property.

In his notice of appeal, Husband stated that "[o]nly that part of the Decree relating to the division of real property is the subject of

the appeal." If Husband was attempting thereby to preclude us from exercising appellate jurisdiction over the other parts of the property division, his attempt was futile. His timely appeal of the division and distribution of some property finally divided and distributed by the May 6, 1986 decree gives us jurisdiction over the division and distribution of all property finally divided and distributed by the May 6, 1986 decree.

When the parties were married in Honolulu on November 6, 1975, Husband, a military retiree, was 46 years old and defendant Michiko Woodworth (Wife) was 35 years old. In May 1976 Husband worked in Saudi Arabia, and Wife went to Japan, the country of her birth. At the end of 1977 or the beginning of 1978, Husband and Wife moved to the island of Hawaii. In July 1978 they purchased Lot 1272 on 22nd Street in Paradise Park, Keaau, Hawaii (TMK 3-1-5-22-93) for $6,500 cash, taking title as tenants by the entirety. In the latter part of 1980, Husband went to Israel to work while Wife remained in Hawaii. In July of 1981, Husband and Wife got together for ten days in San Francisco and Las Vegas. Husband then returned to Israel while Wife returned to Japan, then moved to Hong Kong, then to Guam. In December 1981 Husband visited Wife in Hong Kong and found her sharing an apartment with another man. In August 1982 Husband went to Guam, talked to Wife about a divorce, and then returned to the island of Hawaii.

Between October 30, 1982 and February 25, 1983, Husband and a helper constructed a house on Lot 1272. At the trial, on April 17, 1986, Husband testified that he spent $38,665.18 plus his time and labor to build the house and that he owed his helper $1,900. He was not asked to explain why he did not pay the $1,900 debt out of his cash on hand.

In 1983 Husband consulted an attorney about a divorce, and appropriate papers were sent to Wife in Guam. When Wife asked for a settlement, however, Husband dropped the matter.

Husband funded a First Hawaiian Bank joint checking account with his military retirement checks. In November 1983 Wife withdrew the $850 balance in the account, thereby closing it.

Husband filed his complaint for divorce on September 24, 1985. At the trial Wife's counsel was present, but Wife was not, and only Husband and his helper testified. Husband testified that for

real property tax purposes the county valued the house at $40,593 and the lot at $14,453. The family court denied Wife's request for alimony and awarded Husband his 1979 pick-up truck, his $1,900 checking account, and his "little less" than $5,500 savings account. The court also awarded the house and lot one-half to Husband and one-half to Wife and ordered it sold if neither party was willing and able to buy out the other party.

Contrary to Rule 52(a), Hawaii Family Court Rules, the family court did not enter any findings of fact or conclusions of law. The fact that neither party complained about this deficiency indicates that the material facts are not in dispute. Obviously, however, many material facts are in dispute.

In this appeal Husband contends that the date of final separation (DOFS) occurred in July 1981 and that the family court abused its discretion when it awarded Wife one-half of the net market value (NMV) of both the house and lot, rather than one-half of only the NVM of the lot. In other words, Husband contends that the NMV of the house and the post-DOFS increase of the NMV of the lot should have been awarded to him.

The five categories described in *Reese v. Reese,* 6 Haw. App. ____ 747 P.2d 703 (1987), *aff'd in part, vacated in part,* 69 Haw. ____, 748 P.2d. 1362 (1988), cover NMVs owned by either or both spouses on the date of marriage (DOM), during marriage, and/or at the time of divorce.

The phrase "time of divorce" includes an extended period of time. In footnote 2 of *Cassiday v. Cassiday,* 6 Haw. App. ____, 716 P.2d 1145 (1985), *aff'd in part, rev'd in part,* 68 Haw. ____, 716 P.2d 1133 (1986), we stated: "As a general rule, the critical date is the date of the final separation." Upon further consideration we conclude that the relevant date is the "date of final separation in contemplation of divorce" (DOFSICOD) and outline the factors that cause a particular date to be the DOFSICOD.

The DOFSICOD is the earlier of (1) the date of the completion of the trial or (2) the date when one spouse clearly and unconditionally communicates to the other by word and/or deed that the marriage has in fact ended and that he or she wants a divorce and does not thereafter by word and/or deed communicate a different

message to the other. It is possible for the DOFSICOD to have occurred even though the spouses continued thereafter to live separately in the same residence.

If the DOFSICOD occurs prior to the conclusion of the evidentiary part of the trial, and the NMVs of the properties owned by the spouses at the conclusion of the trial are more or less than the NMVs at the DOFSICOD, then the differences, plus or minus, will be classified as category 6 NMVs.

Therefore, we amend our statement of the categories of property NMVs and their descriptions as contained in *Reese v. Reese, supra,* and *Hashimoto v. Hashimoto,* 6 Haw. App. _____, 725 P.2d 520 (1986), as follows:

**Category 1.** The NMV, plus or minus, of all property separately owned by one spouse on the DOM but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

**Category 2.** The pre-DOFSICOD increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOFSICOD.

**Category 3.** The date-of-acquisition NMV, plus or minus, of property separately acquired by one spouse by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

**Category 4.** The pre-DOFSICOD increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOFSICOD.

**Category 5.** The NMV, plus or minus, of all property owned by one or both of the spouses on the DOFSICOD minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

**Category 6.** The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses at the conclusion of the evidentiary part of the trial and the total of the NMVs, plus or minus, includable in categories 1, 2, 3, 4, and 5.

No part of the NMV of a property is a category 2 value unless the NMV of that property on the DOFSICOD exceeds its NMV on

the DOM. Likewise, no part of the NMV of a property is a category 4 value unless the NMV of that property on the DOFSICOD exceeds its NMV on the date of acquisition during marriage.

If specific property has been separately owned continuously from the DOM to the DOFSICOD, and the NMV of that property on the DOFSICOD is no greater than its NMV on the DOM, then its value includable in category 1 is its NMV on the DOFSICOD. Likewise, if a specific property has been separately owned continuously from the date of acquisition during the marriage to the DOFSICOD, and the NMV of that property on the DOFSICOD is no greater than its NMV on the date of acquisition during the marriage, then its value includable in category 3 is its NMV on the DOFSICOD.

In situations where one spouse, in contemplation of divorce and without the informed consent of the other spouse, has received, obtained, encumbered, released, or conveyed a NMV in an otherwise successful attempt to cause the application of a different uniform starting point (USP) to his or her benefit and/or to the other spouse's detriment, that transaction must be disregarded when the NMVs are categorized.

The spouse who asserts that a NMV is not a category 5 NMV has the burden of proving that assertion. In the absence of sufficient proof that a NMV is other than a category 5 NMV, then that NMV is a category 5 NMV and the USP for dividing it is 50 percent to the husband and 50 percent to the wife.

The USP, *see Hashimoto v. Hashimoto, supra,* for awarding the NMVs within each category is as follows: The USP for dividing the NMVs under categories 1 and 3 is 100 percent to the legal owner spouse and zero percent to the nonowner spouse. The USP for dividing the NMVs under categories 2 and 4 is 75 percent to the legal owner spouse and 25 percent to the nonowner spouse. The USP for dividing the NMVs under category 5 is 50 percent to the husband and 50 percent to the wife. The USP for dividing the NMVs under category 6 is to award them to their legal owner spouses in proportion to their legal ownership.

No more than 50 percent of the NMVs in categories 1, 2, 3, or 4 may be awarded to the nonowner spouse. *Hashimoto, supra.* No more than 50 percent of the separately owned NMVs under category 6 may be awarded to the nonowner spouse. There is no

maximum limit to the category 5 NMVs that may be awarded to a husband or a wife. There is no maximum limit to the jointly owned category 6 NMVs that may be awarded to a husband or a wife.

Lot 1272 is legally owned by Husband and Wife as tenants by the entirety. The USP for dividing its categories 5 and 6 NMVs is 50 percent to Wife and 50 percent to Husband.

The record does not reveal when Husband acquired the $38,665.18 he admits spending between October 30, 1982 and February 25, 1983 for the construction of the house. Any part of it that he earned or acquired before the DOFSICOD was a category 5 NMV which he spent to pay for the house. Any part of the $38,665.18 Husband earned and acquired on and after the DOF-SICOD was his category 6 value which he spent to pay for the house.

Legally, since "the house becomes a part of the realty," *Apolo v. Kauo,* 7 Haw. 755, 756 (1889), the house is also legally owned by Husband and Wife as tenants by the entirety. Whether the NMV of the house is categorized as a category 5 NMV or a category 6 NMV or a combination thereof, the USP for dividing the NMV of the house at the date of trial is 50 percent to Husband and 50 percent to Wife. However, to the extent that Husband's time, labor, and money earned and acquired after the DOFSICOD contributed to the NMV of the house, and Husband did not intend to make a gift thereof to Wife, there is a valid equitable basis upon which to award Husband more than 50 percent of the category 6 NMV of the house. The marital partnership terminates in fact on the DOF-SICOD. Upon divorce the spouses' ownership status changes to tenants-in-common. *Madden v. Madden,* 44 Haw. 442, 355 P.2d 33 (1960). When partitioning improved land owned by tenants-in-common, the court will in appropriate cases make a suitable award to a tenant who improved the land without the consent of the cotenant. 59 Am. Jur. 2d *Partition* § 42 (1971). It is within the family court's discretion to do the same for a co-owner spouse who uses funds he or she separately acquired after the DOFSICOD to improve jointly owned land without the consent of the other co-owner spouse.

This case involves only categories 5 and 6 NMVs. On the current record, it appearing that the value of the house is more than

$38,665.18, the USPs for dividing and distributing the NMVs are as follows:

| Property | Category | Wife | Husband |
|---|---|---|---|
| NMV of land exclusive of house | 5 | 50% | 50% |
| $\dfrac{\text{Amount of category 5 funds in the } \$38,665.18}{\text{NMV of house when constructed}} \times$ NMV of house at conclusion of trial | 5 | 50% | 50% |
| Noncategory 5 part of NMV of house at conclusion of trial | 6 | 50% | 50% |
| Other category 5 NMVs | 5 | 50% | 50% |
| Personal effects | 5 | 100% of hers | 100% of his |

On remand the family court judge should determine: 1) When is the DOFSICOD? 2) What NMVs owned by the parties are category 5 NMVs? 3) What was the NMV of the house when it was constructed? 4) What portion of the NMV of the house when it was constructed was a category 5 NMV? 5) What was the NMV of the house at the conclusion of trial? 6) What portion of the NMV of the house at the conclusion of trial was a category 6 NMV? With this information and the other information in the record, the family court must first determine the USP award and then it must exercise its equitable discretion under applicable case law and Hawaii Revised Statutes § 580-47(a) (1985). If the family court's award materially differs from the USP award, and the family court's award is appealed, the family court must express its reason(s) for the difference(s).

Accordingly, the property division and distribution portion of the May 6, 1986 divorce decree is vacated and remanded for further proceedings consistent with this opinion.

*Emmala C. James* on the briefs for plaintiff-appellant.
*Michael J. Makibe* on the brief for defendant-appellee.