**TERRY LEE COLLIER**, Plaintiff–Appellee, v. **WAYNE DAVID COLLIER**, Defendant–Appellant

NO. 13781

(FC–D NO. 87–0131)

MAY 14, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant Wayne David Collier (Husband) appeals the property division and distribution portion of the January 31, 1989 Divorce Decree (Divorce Decree). We affirm.

## FACTS

Husband and plaintiff Terry Lee Collier (Wife) were married on August 11, 1979. Their date of final separation in contemplation of divorce (DOFSICOD) was February 25, 1987. Wife filed a complaint for divorce on April 6, 1987 and the date of the conclusion of the evidentiary part of the trial (DOCOEPOT) was twenty months later, on December 8, 1988.

During the marriage, on May 22, 1980, Husband seriously injured his back, legs, and wrist at work. In 1981 he and Wife filed suit for damages. On February 4, 1985 a jury, by special verdict, awarded the following damages:

| | |
|---|---|
| $455,900.00 | special damages |
| $250,000.00 | general damages |
| $ 47,500.00 | loss of consortium |
| $753,400.00 | total award |

Husband introduced evidence that the $455,900.00 special damages included no more than $100,000.00 for the loss of wages prior to February 5, 1985 and no less than $355,900.00 for the diminution of his earning capacity after February 4, 1985.

Rounded to the nearest dollar, the actual distribution of the $753,400.00 award was as follows:

| | |
|---|---|
| $103,505.00 | worker's compensation liens, etc. |
| $260,986.00 | attorney fees and costs |
| $388,909.00 | net cash paid jointly to Husband, Wife, and their attorney |

The family court entered the following findings of fact and conclusions of law, among others. The findings and conclusions which Husband challenges in this appeal are emphasized.

## FINDINGS OF FACT

* * *

5. Since the accident and throughout the proceedings herein, [Husband] has not been employed. He testified that the pain from his back injury prevents him from working, although he is able to play golf on a regular basis. He is capable of earning a living and of obtaining employment, but has voluntarily chosen not to do so.

6. *[Wife] worked and also cared for [Husband] throughout his convalescence with no outside help.* She continued to work and help pay their living expenses after his recovery and after they received the personal injury settlement award. There was also some support from workmen's compensation at $860.00 per month from the date of injury for some period of time thereafter.

7. The $388,908.59 received from the personal injury settlement award was controlled solely by [Husband], over [Wife's] objection, and flowed through various accounts with banks and other financial institutions since 1985, and after DOFSICOD. [Husband] initially deposited the award money in joint accounts but subsequently transferred funds to individual accounts in his name without the knowledge and/or consent of [Wife].

8. *[Wife] had history of physical and emotional abuse by [Husband].* She had little control over money matters, in particular, how the settlement award money was to be spent.

9. In October 1986, from funds received from the personal injury settlement award, the parties purchased a home in Pukalani, Maui, Hawaii. Title thereto was taken and held as tenants by the entirety.

* * *

11. *The parties resided together in the Pukalani house until [Wife] left on February 25, 1987 (DOFSICOD) due to physical abuse by [Husband] and his son by a prior marriage.*

\* \* \*

15. The personal injury settlement award funded most of the . . . assets . . . , in particular the financial accounts in [Husband's] name. The current remainder of the award money cannot be fully determined due to the continuous unaccounted flow of money from 1985 to date through the various accounts held by [Husband].

\* \* \*

18. [Husband's] Exhibit A also indicated a $25,000 loan to Ed Rothman, a personal friend of [Husband]; the loan is still outstanding. [Husband] admitted that this loan was made after DOFSICOD.

19. [Wife's] Exhibit 16 received into evidence at the OSC [order to show cause] hearing on January 22, 1988, showed copies of numerous cancelled checks written by [Husband] after DOFSICOD. Among them were several checks for cash, checks to Renee Eckert, [Husband's] girlfriend, a check for $400 to Margaret Lorenz for a puppy, a check for $2,000 to Nelson Armitage for a loan made to Armitage by [Husband], a check for $500 to his son, and a check for $1,960.92 to Zales jewelry store for Christmas presents.

\* \* \*

28. *Although Hawaii appellate courts have not addressed the specific issue of whether a personal injury settlement award is marital or separate property, the majority view of courts that use the principle of equitable distribution, such as Hawaii, holds that money*

*recovery for personal injury is to be included within distributable marital property upon divorce*[.]

\* \* \*

## CONCLUSIONS OF LAW

1. *The marital assets . . . are Category 5 assets with a Uniform Starting Point for division of 50% to [Husband] and 50% to [Wife]*[.]

2. *The entire personal injury settlement award is marital property (Category 5 property), and not the separate property of [Husband], for purposes of distribution herein.*

3. *Based upon [the] DOFSICOD values for the marital assets, the Court deviates from the Uniform Starting Point of 50% to [Husband] and 50% to [Wife] in favor of [Husband] due to the following factors*:

    a. *The speculative value of the outstanding loans to Joe Moreno for $20,000 and Ed Rothman for $25,000; their values are greater due to the unknown amount of accrued interest to be included*;

    b. The permanent partial disability suffered by [Husband's] industrial accident during the marriage;

    c. The purpose of the personal injury award was to primarily compensate [Husband] for his pain and suffering and diminution of his future earning capacity.

\* \* \*

Record, Vol. 3 at 642–50 (citations omitted).

The family court ignored the $2,000.00 loan to Armitage and divided and distributed the other distributable net market values (NMVs) of the parties as of DOCOEPOT as follows:

| Item | Husband | Wife |
|------|---------|------|
| Pukalani Residence | | $80,000.00 |
| 1979 Ford Pickup | $ 2,000.00 | |
| 1979 Ford Fiesta | 300.00 | |
| 1985 Cougar | | 885.00 |
| Jewelry | 2,000.00 | 1,000.00 |
| Household effects | | 3,000.00 |
| American Savings | 18,571.00 | |
| First Hawaiian Bank | | 12,052.00 |
| Wedbush, Nobel & Cook | 75,300.00 | |
| First Hawaiian Bank | | 598.00 |
| Joe Moreno A/R | 20,000.00 | |
| Mastercard | (800.00) | |
| Ed Rothman A/R | 25,000.00 | |
| Totals | $142,371.00 | $97,535.00 |
| Percentages | 59.34% | 40.66% |

## ISSUES AND ANSWERS

Is the family court's conclusion that the uniform starting point (USP) applicable to all of the distributable NMVs distributed in this case is fifty percent to each party, right or wrong? Since the family court's error, if any, favored Husband and disfavored Wife, Husband has failed his burden of showing that the family court abused its discretion when it decided not to award him more.

## DISCUSSION

In cases where compensation is paid or payable to one or both spouses for tort damages, the compensation is paid or agreed to be

paid for one or more of the following pre–settlement and post–settlement damages: (a) special damages (which include medical expenses, rehabilitation expenses, expenses for substituted services, loss of earnings and earning capacity, and the like); (b) general damages (which include pain and suffering, loss of parts of the body and body function, mental and emotional distress, and the like); and (c) loss of consortium.

One group of jurisdictions has concluded that all compensation for tort damages is not marital property. They hold that it is the sole and separate property of the injured person. *See, e.g., Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849, 54 U.S.L.W. 2534 (1986).

A second group has concluded that all compensation for tort damages is marital property. *See, e.g., Boyce v. Boyce*, 541 A.2d 614, 56 U.S.L.W. 2692 (D.C. App. Ct. 1988).

A third group has concluded that the compensation for non-economic loss is nonmarital property, but the compensation for economic loss is marital property. For example, in *Landwehr v. Landwehr*, 111 N.J. 491, 545 A.2d 738 (1988), the New Jersey Supreme Court held that the components of the personal injury recovery were divisible as follows:

1. All to the husband: The portion of the settlement that was intended to compensate the husband for the pain and suffering he endured as a result of his personal injuries.

2. All to the wife: The portion of the settlement that was intended to compensate the wife for her loss of consortium.

3. To be equitably distributed: The portion of the settlement that was intended to compensate the husband for his medical expenses and lost wages.

We disagree with the three groups mentioned above. None of them fully satisfy the partnership concepts applied by Hawaii Family Courts when dividing and distributing DOCOEPOT NMVs in divorce cases.

When dividing and distributing NMVs in divorce cases, the Hawaii Family Court determines the DOCOEPOT NMVs, determines which part, if any, is not divisible and distributable,[1] categorizes the remaining part, starts at the USP for each category, and

---

In *Malek v. Malek*, 7 Haw. App. \_\_\_\_, \_\_\_\_ n.1, 768 P.2d 243, 246–47 n.1 (1989), we stated:

In *Myers v. Myers*, 70 Haw. [143], 764 P.2d 1237 [57 U.S.L.W. 2391] (1988), the supreme court disagreed with part of *Woodworth* [*v. Woodworth*, 7 Haw. App. \_\_\_, 740 P.2d 36 (1987),] and decided (1) that the critical date is not the date of final separation in contemplation of divorce (DOFSICOD); (2) that the critical date is the date of the conclusion of the evidentiary part of the trial (DOCOEPOT); and (3) to abolish category 6. The supreme court expressly did not pass judgment on categories 1, 2, 3, 4, and 5. *Id.* at [155 n.9, 764 P.2d at] 1244 n.9. Thus the following five categories remain in effect:

Category 1. The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT.

Category 3. The date–of–acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.

Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

No part of the NMV of a property is a category 2 value unless the NMV of that property on the DOCOEPOT exceeds its NMV on the DOM. Likewise, no part of the NMV of a property is a category 4 value unless the NMV of that property on the DOCOEPOT exceeds its NMV on the date of its acquisition during marriage.

exercises its discretion while equitably dividing and distributing the various categories of DOCOEPOT NMVs. For example, the part of the DOCOEPOT NMV equal to the NMV, plus or minus, of all property separately owned by one spouse on the date of marriage (DOM), but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party, is a category 1 NMV. The USP for dividing a category 1 DOCOEPOT NMV is one hundred percent to the owner spouse and zero percent to the nonowner spouse. *Malek v. Malek*, 7 Haw. App. \_\_\_\_, 768 P.2d 243 (1989). At the other end of the spectrum, the part of the DOCOEPOT NMV attributable to post–divorce disability pay is not divisible in the divorce cases. *Jones v. Jones*, 7 Haw. App. \_\_\_\_, 780 P.2d 581 (1989).

In Hawaii, under *Woodworth v. Woodworth*, 7 Haw. App. \_\_\_\_, 740 P.2d 36 (1987), and its progeny, all DOCOEPOT NMVs are category 5 NMVs unless and until proven otherwise. The USP for dividing a category 5 NMV is fifty percent to each spouse. The spouse who asserts that a DOCOEPOT NMV is not a category 5 NMV has the burden of proving that assertion.

We hold that the DOCOEPOT NMV directly attributable to the compensation paid or payable for tort damages suffered or predicted to be suffered during marriage is a category 5 NMV, unless it is a category 3 or 4 NMV.

The third group of cases assumes that the family court can accurately segregate the DOCOEPOT NMVs directly attributable

---

If specific property has been separately owned continuously from the DOM to the DOCOEPOT, and the NMV of that property on the DOCOEPOT is no greater than its NMV on the DOM, then its value includable in category 1 is its NMV on the DOCOEPOT. Likewise, if specific property has been separately owned continuously from the date of its acquisition during the marriage to the DOCOEPOT, and the NMV of that property on the DOCOEPOT is no greater than its NMV on the date of its acquisition during the marriage, then its value includable in category 3 is its NMV on the DOCOEPOT.

to the compensation for pain and suffering from the DOCOEPOT NMVs directly attributable to the compensation for medical expense and lost wages. In most cases, this is easier said than done. In cases where the segregation can be and is done, we disagree with the view that the USP for dividing and distributing the general damages and loss of consortium projected to be suffered during marriage is other than fifty percent to each party.

We hold that the DOCOEPOT NMV directly attributable to the compensation paid or payable for tort damages suffered or predicted to be suffered post–DOCOEPOT is not subject to the family court's jurisdiction in the divorce case, unless it is a category 3 or 4 NMV. We disagree with the view that DOCOEPOT NMVs directly attributable to the compensation for tort damages projected to be suffered post–DOCOEPOT are divisible and distributable in the divorce case.

In the instant case, there is no evidence that a DOCOEPOT NMV was directly attributable to the compensation paid or payable for the tort damages projected to be suffered post–DOCOEPOT by Husband. In fact, to the extent that the DOCOEPOT NMV of the Pukalani residence was directly attributable to the compensation paid for any of the projected tort damages, its title proved that a part of the DOCOEPOT NMV directly attributable to the compensation paid for the tort damages was properly included within Wife's category 3 and 4 NMVs. Consequently, Husband failed his burden to prove either that a specific DOCOEPOT NMV was not subject to the family court's jurisdiction in the divorce case or that the applicable USP was more favorable to him than fifty percent to each spouse.

## CONCLUSION

Accordingly, we affirm the property division and distribution part of the January 31, 1989 Divorce Decree.

*Al Albrechtson* (*Richard L. Rost* with him on the briefs) for defendant–appellant.

*Shackley F. Raffetto* (*Michael J. Callahan* with him on the brief) for plaintiff–appellee.

## CONCURRING OPINION OF HEEN, J.

I concur in the result only of the majority decision.