958 P.2d 541

**Yasumasa KURODA, Plaintiff–Appellee,**

v.

**Alice K. KURODA, Defendant–Appellant.**

**No. 18913.**

Intermediate Court of Appeals of Hawai'i.

May 19, 1998.

Robert M. Harris, on the briefs, Honolulu, for defendant-appellant.

Peter Van Name Esser (Daniel S. Ukishima with him on the answering brief) on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., WATANABE and KIRIMITSU, JJ.

BURNS, Chief Judge.

Defendant–Appellant Alice K. Kuroda (hereafter Alice, Wife, or Defendant) appeals the family court's (1) June 14, 1994 "Order Granting Motion in Limine to Exclude Agreement in Contemplation of Divorce Filed 5/13/94" and (2) March 20, 1995 Divorce Decree. We conclude that (1) was harmless error. We affirm (2) except that we vacate that part pertaining to issues (alimony/spousal support and division and distribution of property and debts) other than the divorce itself. We remand for further proceedings consistent with this opinion.

This opinion:

A. Discusses the limits of motions in limine.

B. Outlines the dispositive questions for determining whether, in the situation where

the parties lived together as husband and wife before and during the time from 1975 to 1993, a 1975 Agreement in Contemplation of Divorce is enforceable in a divorce action commenced in 1993.

C. Decides that the fact that a lump sum personal injury award was compensation for dental malpractice injuries suffered by one party during the marriage is not a factor to be considered when deciding how to divide the proceeds of the award.

D. Decides that when there is no evidence of what portion of the lump sum personal injury award, if any, was compensation for dental malpractice injuries to be suffered by one party post-marriage, it must be assumed that all of the award was for damages during the marital partnership. The party who alleges that an item of property of one or both of the parties is not partnership property has the burden of proof.

## BACKGROUND

Plaintiff–Appellee Yasumasa Kuroda (hereafter Yasumasa, Husband, or Plaintiff) was born on April 28, 1931. Alice was born on March 14, 1937. The parties were married on March 21, 1961. Their daughter was born on June 16, 1964, and their son was born on September 13, 1966.

On November 19, 1975, Yasumasa and Alice entered into an Agreement in Contemplation of Divorce (1975 AICD) which states in relevant part as follows:

WHEREAS, in consequence of disputes and unhappy differences, the parties hereto contemplate a divorce and the parties desire to settle their property rights, custody, support and education of the minor children, the support and maintenance of the Wife and other rights and obligations arising out of the marital relation,

IT IS THEREFORE AGREED:

1. *Consideration.* The consideration for this Agreement is the mutual promises and agreements herein contained.

2. *Separation.* It shall be lawful for each party at all times hereafter to live separate and apart from the other at such place or places as he or she may from time to time choose or deem fit.

3. *Division of Personal Property.* Husband agrees that Wife shall take as her own personal property any and all personal property, household effects, household furniture, and furnishings heretofore used and held by them in common.

4. *Division of Real Property.* Husband shall convey to Wife upon demand by Wife all of the real property held by the parties including all real property acquired before the marriage by either party....

5. *Custody.* The Wife shall have the care, custody and control of the minor children of the parties....

6. *Support of Wife.* Husband agrees to pay to Wife one-half of the net income from every source including retirement fund and royalties after deduction of federal, state, income and withholding taxes, unemployment compensation taxes to Wife until the following condition occurs:

a). Wife's death;

b). Death of Husband.

7. *Support of Children.* Husband shall pay to Wife for the support, maintenance and education of the minor children, the sum of $150.00 per month per child....

8. *Insurance.* Wife shall have upon demand, one-half equity and beneficial interest in the Northwestern Mutual Life Insurance Company policy No. 5–570–290.

9. *Tax Deduction.* ...

10. *Taxes.* Wife shall bear all federal and state gift, income or real property taxes, upon the conveyance of any and all property to her by Husband.

11. *Debts.* a). Wife shall pay all debts of the marriage, including mortgages on real property and hold Husband harmless therefrom; b). Husband shall pay all attorney's fees and costs of Court in connection with all divorce and separation proceedings.

12. Husband acknowledges that he is of sound mind and body and that he understands the contents and effects of this document and that he will not be able to live in keeping with his accustomed standard of living and reasonable living requirements.

13. Wife acknowledges that she is of sound mind and body and the provisions of the Agreement for her support and maintenance are fair, although inadequate and unsatisfactory and not in keeping with her accustomed standard of living and her reasonable requirements. The Wife accepts therefore, these provisions in full and final settlement and satisfaction of all claims and demands for alimony, support and property division.

14. Husband and Wife acknowledge that the contents of this document has been explained to them by Husband's attorney, WINSTON MIRIKITANI and that it is his opinion that this Agreement is not fair to the Husband and that the parties agree to the consent of this document against the advice of Husband's attorney.

15. Husband and Wife acknowledge that all the real and personal property owned by the parties at the date of execution of this Agreement is designated in Exhibit "A" appended hereto and incorporated by reference and that this Agreement applies only to the property as stated in Exhibit "A".

Exhibit A attached to the 1975 AICD lists the following properties:

| Real Estates | Tax Key |
| --- | --- |
| 5319 Poola Street | 3–6–023–046 |
| 2401 Halenoho Place | 3–4–086–007 |
| Hawaiian Ocean View Estates | 7–3–042–001 |
| | 7–3–042–002 |
| Kona Palisades | 9–2–1777–027 |
| | 9–2–1777–028 |

| Limited Partnership | |
| --- | --- |
| Waimea Development Corporation | |

| Stocks | |
| --- | --- |
| Clinton Oil | 50 shares |
| Greater Idaho Corporation | 925 shares |

During the 17 plus years after the 1975 AICD, the parties neither separated nor filed for divorce and continued living together with their children.

In 1986, Alice and Yasumasa sued Alice's dentists, Drs. Edmund Wong and Norman Y. Ueda, alleging their negligent treatment of Alice from 1966 through 1986. The case settled, and, in 1989, after deductions of attorney fees and costs, Alice received $446,-886.00. Both Alice and Yasumasa signed the releases. The settlement was for general damages only and the settlement checks were payable only to Alice.

Yasumasa filed his Complaint for Divorce on January 8, 1993. Alice filed her Cross-Complaint for Divorce on January 25, 1993.

On May 13, 1994, Yasumasa filed a "Plaintiff's Motion in Limine to Exclude Agreement in Contemplation of Divorce Dated 11/19/75" (Yasumasa's M/L) seeking

to exclude from trial or from [Alice] making any reference to the purported Agreement in Contemplation of Divorce dated November 17, 1975, made by and between the parties on the basis that there was not consent given by the Agreement; that the Agreement was obtained through coercion; that the Agreement is unconscionable; and finally, that the parties never intended the Agreement to be effective since the parties never followed any of the terms and conditions of said purported Agreement.

Yasumasa's M/L was heard on June 9, 1994 at a nonevidentiary hearing. In relevant part, the following was stated at that hearing:

[COUNSEL FOR YASUMASA]: ...

Now, in my memorandum I said to the Court that there are a number of reasons why we feel that the Court should not take this—this contract into consideration.

For instance, it is—it is claimed by my client that this agreement was entered into as a result of threats of (indiscernible) .... from his wife that she would file for divorce some eighteen years ago.

Now, in—order to show his faithfulness to his wife he agreed to sign this agreement.

\* \* \* \* \* \*

None of the parties really have abided by this agreement since that agreement was signed eighteen years ago.

In fact, [Yasumasa] has paid all of the debts of the marriages (sic) including the mortgages.

He has paid all of the support and maintenance and education of the children.

Everything went on as if this agreement did not even exist.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: ...

The Court's going to find that there's been a significant change in circumstances; one of which being that the children who were at that point in their minority are now adults and over thirty.

That all their education, all their circumstances have been taken care of.

That property ownership and responsibilities of the parties has [sic] changed over the past eighteen years.

And that as a matter of public policy for these—for these specific purposes and on a case by case basis only, Court's going to find that the post nuptial agreement is not valid.

On June 14, 1994, the family court entered its "Order Granting Motion in Limine to Exclude Agreement in Contemplation of Divorce Etc."

On July 20, 1994, Alice filed "Defendant's Motion for Order Clarifying Order Granting Motion in Limine to Exclude Agreement in Contemplation of Divorce." After a July 27, 1994 nonevidentiary hearing, the family court entered its "Order Granting Motion for Order Clarifying Order Filed July 20, 1994" clarifying its June 14, 1994 order as follows: "The post-nuptial [sic] agreement dated 11/9/75 is invalid; however, pursuant to HRS 580–47 the family court may consider the post-nuptial [sic] agreement in any final division of property." The language after the semicolon was inserted pursuant to the agreement of counsel for Yasumasa and counsel for Alice.

On August 11, 1994, the parties separated. The trial was held on September 14, 15, and 16, 1994. Thus, September 16, 1994 is the date of the conclusion of the evidentiary part of the trial (DOCOEPOT). On October 7, 1994, the family court orally announced its decision. On October 27, 1994, Alice filed "Defendant's Motion for Reconsideration of Decision Announced October 7, 1994."

On December 30, 1994, the family court entered its "Order Granting in Part Defendant's Motion for Reconsideration of Decision Announced on 10/7/94" wherein it increased alimony/spousal support from $900.00 per month to $1200.00 per month.

On March 20, 1995, the family court entered its Divorce Decree. In relevant part, the Divorce Decree:

A. Ordered Yasumasa to pay to Alice alimony/spousal support of $1,200.00 per month until Alice's death, Yasumasa's death, Alice's remarriage, the further order of the court, or seven years, whichever occurs first.

B. Ordered that, as a condition of receiving alimony/spousal support, Alice must participate in therapy from Dr. Carolyn Staats or her successor until Alice is discharged.

C. Ordered the sale of the marital residence at 5319 Poola Street and the division of the net proceeds sixty percent (60%) to Alice and forty percent (40%) to Yasumasa.

D. Ordered the sale of lots 11, 74, and 75 in Lakeland Village, Mason County, Washington, and the equal division of the net proceeds.

E. Awarded to Alice her choice of either lot 111 or 112 in the Kona Palisades Subdivision and awarded the other lot to Yasumasa.

F. Awarded to Alice her choice of either lot 6 or 7 in the Ocean View Estates and awarded the other lot to Yasumasa.

G. Awarded all cash, bank accounts, securities, and life insurance cash surrender value one-half to each party.

H. Awarded the 1984 Toyota automobile to Yasumasa and ordered him to pay one-half of its value to Alice.

I. Awarded the stamp collection to Yasumasa and the coin collection to Alice.[1]

J. Awarded most of the household property to Alice.

K. Awarded Minerva Research, Inc., to Yasumasa but ordered that

---

1. In a document filed on June 7, 1994, Plaintiff–Appellee Yasumasa Kuroda alleged that "Yasu-

masa also owns a valuable stamp and coin collection valued at $7,000[.]" ...

each party shall be paid their past salary owed by the business, thereafter, any monies presently in the business bank accounts or any funds collectible by December 15, 1994, shall be divided between the parties one-half (1/2) to each. [Yasumasa] shall be awarded the computer that he is presently using. [Alice] shall be awarded the computer that she is presently using. All other assets of the company, i.e., automobile, copier and fax machine, shall be awarded to [Yasumasa] and valued, and [Yasumasa] shall pay to [Alice] one-half (1/2) of the value of said assets.

L. Awarded the $446,886.03 personal injury award sixty percent (60%) to Alice and forty percent (40%) to Yasumasa.

M. Awarded all retirement, pension, IRA, profit-sharing and/or other deferred compensation benefits pursuant to the *Linson v. Linson*, 1 Haw.App. 272, 618 P.2d 748 (1980), formula.

N. Ordered each party to pay his or her own attorney fees and costs.

The findings of fact part of the August 17, 1995 Findings of Fact and Conclusions of Law state in relevant part as follows:

1. The parties were married on March 21, 1961.

2. At the time of the contested divorce hearing [Yasumasa] was sixty-three (63) years old and [Alice] was fifty-seven (57) years old.

3. Two children were born during the marriage. The eldest child, a daughter, was thirty (30) years old at the time of the contested divorce hearing and the youngest child, a son, was then twenty-eight (28). Neither of the children were financially dependent on the parties at the time of the contested divorce hearing.

4. . . . At the time of the divorce hearing, [Yasumasa] was a tenured professor at the University of Hawaii [Hawai'i]—Manoa where he has taught for twenty-eight (28) years, receiving a gross salary of approximately $75,000.

5. . . . [Alice] earned both a B.A. in history and economics and a M.A. in sociology and economics from Montana State University and lectured in sociology and economics part-time at both the University of Hawaii [Hawai'i]—Manoa and Chaminade University from approximately 1973 to 1982.

＊　　＊　　＊　　＊　　＊　　＊

8. During their approximate 33 years of marriage, the parties have lived very frugal lives, limiting their expenses for dining out, clothing, traveling and social gatherings to a minimum. Vacations were taken only in conjunction with educational grants. As a result of the frugal type of life, the parties were able to acquire assets such as a home and pay off the mortgage early.

＊　　＊　　＊　　＊　　＊　　＊

11. From 1982 to the present [Yasumasa] and [Alice] together operated a business called Minerva Research, Inc. which did marketing and political surveys, research, and analysis. This was essentially part-time work for both of them, with most of the work done in election years in the months prior to elections. [Alice] was primarily the interviewer and statistician while [Yasumasa] primarily prepared the final reports. The parties operated the business together from its inception, each with a different role. Whether the business can continue viably without the participation of both of the parties is uncertain. To that extent, the business operated by the parties jointly is no longer a viable business.

12. The parties' business, Minerva Research, Inc., is owned 34% by [Alice], 33% by [Yasumasa] and 33% by their daughter. [Yasumasa] is owed approximately $36,000 in back pay from Minerva and [Alice] is owed approximately $26,500.

13. In 1975, after fourteen (14) years of marriage, marital problems developed between the parties. [Alice] believed that [Yasumasa] was involved in a relationship with another woman. [Yasumasa] denied the allegation then and now.

14. [Yasumasa] wanted to save the marriage and keep the family together. In order to persuade [Alice] not to leave and to show [Alice] that he was willing to give her everything if he was unfaithful, the

parties entered into an Agreement in Contemplation of Divorce on November 19, 1975.

15. The parties did not then divorce and they continued to live together as husband and wife for slightly more than seventeen (17) more years, until January 8, 1993, when [Yasumasa] filed for divorce.

16. The parties have not implemented any of the terms and conditions of the Agreement dated November 19, 1975. . . .

17. After the execution of said Agreement, the parties further acquired additional real properties, retirement, annuities, bank accounts, time certificates and were the recipients of a personal injury settlement in the approximate amount of $446,886.03.

18. [Yasumasa] filed a Motion in Limine to exclude said Agreement at trial.

19. The Court granted [Yasumasa's] Motion in Limine and by Order filed June 14, 1994 found the Agreement executed on November 19, 1975, to be invalid.

20. [Alice] thereafter filed a Motion for Order Clarifying Order Granting Motion in Limine on July 20, 1994, which motion was granted by Order filed on July 27, 1994. The Court ordered that although the post nuptial agreement[2] dated November 19, 1975 was invalid, pursuant to HRS 580–47, the trial court may consider the post nuptial agreement in any final division of property.

21. This Court has considered the post nuptial Agreement and the circumstances upon which it was signed and implemented as one of the circumstances to be considered in this divorce pursuant to HRS 580–47. Under the factors set forth in HRS 580–47, the Court finds it would be inequitable to enforce the Agreement.

22. [Yasumasa] and [Alice] were plaintiffs in a civil lawsuit . . . filed on December 15, 1986, . . . against [Alice's dentists]. The lawsuit claimed that [Alice] received negligent treatment from 1966 through 1986.

23. As a result of the alleged negligence, [Alice] has undergone many surgical procedures and endured pain and suffering. [Alice] also endured emotional, psychological and neurological problems resulting from this alleged negligence. [Yasumasa] also, as a result of said alleged negligence, was required over the years to be more involved in the shopping and cleaning of the home, the care of the children, and in caring for [Alice] during the period of time she was incapacitated.

24. [Yasumasa] was, during the period of [Alice's] incapacitation, also more involved in the day-to-day household chores, cleaning of dishes, laundry, etc., and it was a very difficult time for both [Yasumasa], [Alice] and their children.

\* \* \* \* \* \*

29. Said claim for negligence was settled, and the parties received as general damages, after payment for attorney's fees and costs, the sum of $446,886.83. [Yasumasa] and [Alice] were plaintiffs in the lawsuit and they were both required to sign the Release documents. The settlement documents were for general damages and not special damages.

30. After the settlement monies were received, the day-to-day family expenses were paid by Plaintiff's income and the settlement monies were saved and invested except for expenses such as their daughter's wedding and reception.

31. The Court finds that the personal injury award is a marital asset and should be shared by the parties. In light of the pain and suffering personal to and endured by [Alice], Court finds it fair, equitable and reasonable, that the personal injury award be shared by the parties 60% to [Alice] and 40% to [Yasumasa].

32. [Alice's] dental problems had not been resolved even as of the time of the contested divorce trial, as many of the symptoms experienced through this extended period continued. . . .

---

**2.** The family court described the November 19, 1975 Agreement in Contemplation of Divorce as a "post nuptial agreement." It is a specific kind of "post nuptial agreement" wherein the parties expressly "contemplate a divorce[.]"

33. In 1990 Alice suffered an acute myocardial infraction [sic]. Her EKG shows anterolateral ischemia, acute. She currently suffers from intermittent chest pains for which [s]he takes nitroglycerin and tranquilizers.

34. [Alice] also has been found to be experiencing a significant degree of affective distress manifested in significant levels of anxiety and depression. . . .

\*    \*    \*    \*    \*    \*

37. [Alice] is not a career woman. Her university degrees were earned years ago and would not enable her to presently work as a teacher. Due to problems with her physical and emotional health, she is not capable of working at all presently. [Yasumasa] appears to be able to continue at his present employment for another 7 years before retirement given his current health.

38. Because of these problems, [Alice] will also need to incur post-divorce expenses to maintain her standard of living. For example, she will have transportation expenses (taxis and public transportation), ongoing medical expenses, the expense of ongoing therapy, a housekeeper, laundry expenses, and will likely need to eat out more often than most people on average, or than she has in the past. While the Court is mindful that [Alice] is not entitled to a higher standard of living than what she enjoyed during the marriage, the Court does not consider these future expenses as frivolous or additional expenditures that increases her standard of living but merely keep her at a respectful standard of living to which she is accustomed.

## CONCLUSIONS OF LAW

\*    \*    \*    \*    \*    \*

7. Having considered the factors in HRS 580–40, 580–47(a) and [sic] Court finds its property division and award of alimony to be fair and equitable. . . .

8. That the property and debts of the parties be allocated as follows: . . .
(Footnote added.)

### DISCUSSION

1.

Hawai'i Revised Statutes (HRS) § 572–22 (1993) states that "[a]ll contracts made between spouses, whenever made, whether before or after June 6, 1987, and not otherwise invalid because of any other law, shall be valid." [3]

With respect to spousal support and child support, HRS § 572–22 specifies that such agreements "shall be subject to approval by the court in any subsequent proceeding for divorce or judicial separation[.]" With respect to the division of property and debts, however, there is no such limitation.

Although the following quotation was written with respect to HRS § 572D–10 (1993) and premarital agreements, it also applies with respect to HRS §§ 572–22 and 584–22(a) and marital agreements and divorce agreements.

Section 10 of the Hawaii [Hawai'i] Act specifically states that such pre-marital agreements are valid and enforceable if otherwise valid as contracts. Unless the agreement rises to the level of unconscionability, a merely "inequitable" contract is not unenforceable under contract law. Furthermore, when a premarital agreement setting forth . . . property division in the event of divorce is *not unconscionable* and has been *voluntarily* entered into by the parties with knowledge of the financial situation of the prospective spouse, enforcement of the agreement does not violate the principal of a "just and equitable" award under HRS § 580–47.

*Lewis,* 69 Haw. at 500–01, 748 P.2d at 1365–66 (footnote omitted and emphasis in original).

*Epp v. Epp,* 80 Hawai'i 79, 85, 905 P.2d 54, 60 (App.1995).

■ Thus, in a situation where, in November 1975, a married couple "contemplate a

---

**3.** Hawai'i's Uniform Parentage Act, Hawai'i Revised Statutes § 584–22(a) (1993), states that "[a]ny promise in writing to furnish support for a child, growing out of a supposed or alleged father and child relationship, shall not require consideration and shall be enforceable according to its terms."

divorce and ... desire to settle their property rights, custody, support and education of the minor children, the support and maintenance of the Wife and other rights and obligations arising out of the marital relation" and enter into "an Agreement in Contemplation of Divorce[,]" and thereafter do not initiate divorce proceedings but live together continuously until the husband files for a divorce in 1993 and the wife responds by filing a cross-complaint for divorce, the 1975 AICD is enforceable in the divorce case unless (A) the 1975 AICD shows that it was not intended to apply to divorce proceedings initiated in 1993, (B) the parties abandoned the 1975 AICD prior to 1993, or (C) the 1975 AICD is unconscionable.

The fact that the party who does not want the 1975 AICD enforced in 1993 knew or should have known when he signed it in 1975 that it was then unconscionable and that it probably would be similarly unconsionable in 1993 does not change the fact that the 1975 AICD is unenforceable against him in 1993 if it is unconscionable in 1993.

■ If the 1975 AICD is not enforceable in the divorce case, the 1975 AICD cannot be considered by the family court when the family court decides how it will divide the property of the parties in the divorce case.

■ With respect to (B), the abandonment of a contract is a matter of intention to be ascertained from the relevant facts and attendant circumstances. "Abandonment need not be expressed; it may be inferred from the conduct of the parties and the attendant circumstances." *Anderson v. Oceanic Properties, Inc.*, 3 Haw.App. 350, 358, 650 P.2d 612, 618 (1982) (citation omitted). A contract is abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces. 17A Am.Jur.2d *Contracts* § 543 (1991).

2.

■ Alice contends that it was error for the family court to grant a motion in limine barring admission of a post-nuptial agreement in contemplation of divorce based on a finding that it was "invalid" where (a) none of the Hawai'i Rules of Evidence Rule 403 criteria for barring relevant evidence was established and (b) there was no evidentiary hearing establishing factual circumstances warranting invalidation of the agreement.

Alice's cross-complaint implicitly sought, among other things, to enforce the 1975 AICD. As noted previously, Yasumasa's M/L sought

to exclude from trial or from [Alice] making any reference to the purported Agreement in Contemplation of Divorce dated November 17, 1975, made by and between the parties on the basis that there was not consent given by the Agreement; that the Agreement was obtained through coercion; that the Agreement is unconscionable; and finally, that the parties never intended the Agreement to be effective since the parties never followed any of the terms and conditions of said purported Agreement.

■ In other words, knowing that Alice was seeking to enforce the 1975 AICD, Yasumasa's M/L sought to have the 1975 AICD declared invalid on the basis of lack of consent, coercion, unconscionability, and/or abandonment. We conclude that a motion in limine is not an authorized method for presenting issues involving genuine issues of fact (in contrast to stipulated facts, questions of law, and matters of discretion) to the court for decision.

The motion [in limine] affords an opportunity to the court to rule on the admissibility of evidence in advance, and prevents encumbering the record with immaterial or prejudicial matter, as well as providing a means of ensuring that privileged material as to which discovery has been allowed by the court will not be used at trial if it is found to be inadmissible.

75 Am.Jur.2d, *Trial* § 94 (1991) (footnotes omitted).

The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss. Nor should the motion be used to perform the function of a directed verdict. Motions in limine are not to be used as a sweeping means of testing issues of law. And deficiencies in pleadings or evidence are not appropriately resolved by a motion in limine. Clearly, a motion in limine cannot

properly be used as a vehicle to circumvent the requirements of rules of procedure. *Id.* § 99 (footnotes omitted). In the instant case, however, although the family court should not have decided the validity of the 1975 AICD by way of a pretrial motion in limine, the subsequent trial proved its error to be harmless.

### 3.

Alice contends that, in light of HRS § 572–22 and *Harrington v. Harrington*, 41 Haw. 89 (1955), the decision in Finding of Fact (FOF) No. 21 that it is inequitable to enforce the 1975 AICD is not a valid basis for not enforcing the property division parts of the 1975 AICD. We agree. However, the record is clear that the 1975 AICD is unconscionable. It awards to Alice all personal property "used and held by them in common" and all real property, implicitly allows Alice to keep her own personal property including her accounts, requires Yasumasa to pay to Alice one-half of his "net income from every source including retirement fund and royalties after deduction of federal, state, income, and withholding taxes" until the earlier of his or Alice's death, and requires Yasumasa to "pay all attorney's fees and costs of Court in connection with all divorce and separation proceedings." Although it requires Alice to pay all taxes "upon the conveyance of any and all property to her by [Yasumasa]" and to "pay all debts of the marriage[,]" there is no evidence of any such taxes or debts.

### 4.

Alice contends that the family court abused its discretion when it divided the personal injury settlement award sixty percent (60%) to Alice and forty percent (40%) to Yasumasa. Alice challenges FOF No. 31. According to her,

This finding is erroneous because the pain and suffering was personal to and endured by [Alice]. Under the partnership principles which govern divorce property division compensation of that nature is not profits of the marital partnership, and is not divisible as a Category 5 NMV. *Gardner v. Gardner*, 8 Haw.App. 461, 810 P.2d 239 (1991). Further, a significant portion of the personal injury award was compensation for damages which will be suffered post-divorce and should not have been divided between the parties. *Collier v. Collier*, 8 Haw.App. 28, 791 P.2d 725 (1990).

We disagree with Alice that a cash award for dental malpractice injuries suffered by Alice during the marriage "is not divisible as a Category 5 NMV [4]." (Footnote added.) The Partnership Model applies to the proceeds received or receivable by a partner from a third-party for tort injuries suffered during the marriage. "The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4" is a Category 5 NMV. *Tougas v. Tougas*, 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994). "[U]nder the Partnership Model Division, Category 2, 4, and 5 NMVs are divided 50% to the owner and 50% to the nonown-

---

4. In *Malek v. Malek*, 7 Haw.App. 377, 380–81 n. 1, 768 P.2d 243, 246–47 n. 1 (1989), we defined five categories of net market values in divorce cases. They are as follows:

Category 1. The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DO-COEPOT [date of the conclusion of the evidentiary part of the trial].

Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluded the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouse, or to a third party.

Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.

Category 5. The difference between the NMV's, plus or minus, of all property owned by one or both of spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3 and 4.

er." *Jackson v. Jackson,* 84 Hawai'i 319, 332, 933 P.2d 1353, 1366 (App.1997).

Further, *Gardner* does not conclude what Alice says it concludes, and *Collier v. Collier,* 8 Haw.App. 28, 37, 791 P.2d 725, 730 (1990), is authority that the DOCOEPOT NMV directly attributable to .the compensation paid or payable for tort damages suffered or predicted to be suffered post-DOCOEPOT is not subject to the family court's jurisdiction in the divorce case unless it is a category 3 or 4 NMV. In this case, however, there is no evidence of what portion of the award, if any, was for post-DOCOEPOT damages. Until such evidence is presented, it must be assumed that the entire award received pre-DOCOEPOT was for pre-DOCOEPOT damages. The party who alleges that an item of property of one or both of the parties is not partnership property has the burden of proof.

We agree with Alice that the fact that she predictably would continue to suffer the consequences of those injuries post-DOCOEPOT is a factor to be considered by the family court when it makes its alimony/spousal support and property division decisions in the divorce case. Under HRS § 580–47 (Supp.1995), when the family court makes its "further orders" in divorce cases, it "shall take into consideration ... the condition in which each party will be left by the divorce[.]"

### 5.

Alice challenges FOF No. 30. She cites the evidence that

[t]he parties used approximately $9,000 of the settlement proceeds for their daughter's wedding expenses. In 1990[,] $10,000 in joint marital funds and $26,000 of the settlement proceeds were used to buy three (3) undeveloped lots in Washington State. [Yasumasa] estimates the present value of these lots at $66,000. [Alice] loaned the parties' daughter and son-in-law $108,000 from the settlement proceeds to build a house and in September 1994 she loaned their son $95,000 (interest free) from the settlement proceeds to buy a house.

In other words, although the Divorce Decree ordered that "the monies in the amount of $446,886.03 ... shall be divided between the parties, 60% to [Alice] and 40% to [Yasumasa,]" the $446,886.03 "monies" did not exist as "monies." Although some of the monies were used to purchase the three lots in Washington State, the Divorce Decree divided the net proceeds from the sale of these lots one-half to each party, not sixty-forty.

The Divorce Decree said nothing about the $108,000.00 loaned to the daughter and son-in-law and the $95,000.00 loaned to the son. On this subject, Alice states in her Amended Opening Brief as follows:

However, although the Divorce Decree does not so state, the Family Court's comments at the Reconsideration Motion hearing indicate the Court's apparent intent that the accounts receivable from the children would be assigned to [Alice] because she made the loans. If that is correct, given the fact that the $95,000 loan to the son was interest free and that the $108,000 loan to the daughter may also have been interest free, that means that [Yasumasa] will receive income producing assets with a value of $275,252 while [Alice] will receive income producing assets with a value of $161,630, together with the accounts receivable.

It appears that the accounts receivable were owed only to Alice. If so, the family court implicitly awarded them to Alice as part of her sixty percent (60%).

### 6.

Alice contends that it was error to award Alice only $1,200.00 per month alimony/spousal support for seven years, or until her death, her remarriage, or Yasumasa's death, subject to a provision that her alimony/spousal support would be reduced to $500.00 per month if and when Yasumasa retired before the end of the seven-year period.

In the words of her Amended Opening Brief, Alice contends that "the alimony award in [Alice's] favor is insufficient to allow her to maintain herself at the standard of living established during the marriage, recognizing that standard allowed the parties to save and build up their net worth from current income. [Yasumasa] will still be able to do so. [Alice] will not." We conclude that the ability to continue to save and build up

**430**

one's net worth is not a valid standard of living consideration justifying the award of increased alimony/spousal support.

However, in light of our decision to vacate the property division part of the Divorce Decree, and considering the impact the property division has on Alice's entitlement to alimony/spousal support, we vacate the alimony/spousal support part of the Divorce Decree and remand for reconsideration of the alimony/spousal support award in the light of the property division.

## CONCLUSION

Accordingly, we conclude that the June 14, 1994 "Order Granting Motion in Limine to Exclude Agreement in Contemplation of Divorce Filed 5/13/94" was harmless error. We affirm the March 20, 1995 Divorce Decree except that we vacate parts 4 through 11 of the Divorce Decree pertaining to issues other than the divorce itself. We remand for further proceedings consistent with this opinion.